UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HAMMLER,<br><br>  Plaintiff,<br><br>  v.<br><br>RALPH DIAZ, *et al.*,<br><br>  Defendants. | Case No.  2:20-cv-1890-DC-JDP (P)<br><br>ORDER; FINDINGS AND RECOMMENDATIONS |

Plaintiff, a state prisoner, brought this case alleging that defendants violated (1) his First Amendment rights to freedom of speech and to be free from retaliation for protected activity and selective enforcement, (2) his Eighth Amendment rights by ignoring imminent threats to his safety, and (3) unspecified constitutional rights by adhering to a "code of silence." Plaintiff also brings several state law claims against defendants, including negligence, assault, and intentional infliction of emotional distress. Defendants have moved to dismiss the complaint, ECF No. 106. Plaintiff has filed an opposition, ECF No. 108, and defendants have filed a reply, ECF No. 109. After review of the pleadings, I recommend that defendants' motion to dismiss be granted. I also recommend that the claims against the unserved defendants be dismissed without prejudice.

1

Finally, I will deny plaintiff's motion to have defendants' counsel held in contempt, ECF No. 103.

## I. Motion to Dismiss

### A. Legal Standards

A complaint may be dismissed under that rule for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co.*, 710 F.3d at 956. Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

### B. Analysis

#### i. Background

Defendants argue that all claims raised by plaintiff against them in the first amended complaint are flawed. Plaintiff alleges that, on March 9, 2019, while incarcerated at California State Prison Sacramento ("CSP-SAC"), he witnessed another inmate's murder at the hands of a prison gang. ECF No. 13 at 5. Plaintiff claims that he was interviewed by prison staff about the

murder, and staff attempted to persuade him to keep quiet about staff "allowing" the murder to occur. *Id.* at 7.  After returning to his cell, plaintiff was contacted by Chavez, who is alleged to be an inmate part of the "SNY" gang that committed the murder. *Id.* at 8.  Chavez told plaintiff that he would not be harmed so long as he did not mention the gang's involvement in the murder. *Id.*

Plaintiff lodged a prison grievance concerning the murder on March 11, 2019, and he claims that it was ignored by staff. *Id.* at 8-9.  Plaintiff does not allege what these grievance actually contained or alleged; he claims only that the grievance "alluded" to the murder. *Id.* at 8.  Plaintiff alleges that staff's decision to ignore his grievances amounts to a First Amendment violation on the part of defendants Voong and Diaz, both of whom have a role in supervising the processing of prisoner grievances. *Id.* at 9.  He also claims that Diaz's agents at CSP-SAC placed him on a yard with SNY gang members, despite knowing of the threat posed by the gang to his safety. *Id.* at 11-12.

Next, plaintiff alleges that he informed defendants Goss and Gallagher, both correctional officers, about his safety concerns on two unspecified instances. *Id.* at 12.  Defendant Goss allegedly attempted to dissuade him from telling the public about the murder. *Id.* at 13.  Then, in June 2019, he claims that Goss removed him from secure housing and transferred him to an area occupied by SNY gang members, despite knowing of the threats to his safety. *Id.*

Plaintiff alleges that, on November 29, 2019, Burnes, Loza, and Gamboa—three non-party correctional officers—made threatening gestures toward him. *Id.* at 14.  He claims that they did so because Burnes was involved in facilitating the murder he witnessed. *Id.*  Defendant Waller, a psychiatric technician, was allegedly present when the three correctional officers threatened plaintiff, but he declined to alert the sergeant on duty. *Id.* at 14-15.  Plaintiff then falsely reported that he was suicidal, in an attempt to force Waller to summon other staff that would protect him from the aforementioned correctional officers. *Id.*  Waller declined to recognize plaintiff's claim that he was suicidal. *Id.*  Despite this failure, plaintiff does not allege that any harm befell him. *Id.* at 15-16.  Plaintiff also claims that he challenged defendant Scott, a psychiatric technician supervisor, about her alleged condonement of Waller's "pattern of conduct," and that she declined to take any action. *Id.* at 17.

Plaintiff claims that on January 14, 2020, defendant Matta, a correctional counselor, summoned him to an "ICC" hearing, where plaintiff explained that Burnes was a threat to his safety. *Id.* at 17-18. Defendants Dunn and Navarro were also present. *Id.* at 18. Plaintiff also informed these defendants about the threats made against him by inmate Chavez and his gang. *Id.* at 18. These defendants allegedly refused to place plaintiff in single-man security housing. *Id.* at 18-19. Instead, they allegedly attempted to transfer plaintiff to either Tehachapi State Prison or Kern Valley State Prison, both of which are alleged to have large populations of "IR" gang members. *Id.* Plaintiff was not transferred, however, because he attacked an officer. *Id.* at 51-58. He claims that he did so because he saw no other option to prevent the transfer. *Id.*

### ii.    Claims Against Defendant Diaz

Defendants argue that plaintiff has failed to adequately allege that Diaz, the secretary of CDCR, had any personal involvement in or awareness of the threats to plaintiff's safety alleged in the complaint. ECF No. 106 at 13. I agree. Under section 1983, a supervisory defendant is liable only for his own actions; there is no *respondeat superior* liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Here, plaintiff has failed to allege, with sufficient specificity, how Diaz was involved in the claimed violations of his rights. There is no contention that Diaz responded to or was aware of his grievances, and plaintiff's allegation that Diaz's agents placed him on yards with gang members does not sufficiently implicate Diaz himself. There is no plausible allegation that these unnamed agents did so at the secretary's direction. Accordingly, plaintiff's section 1983 claims against Diaz should be dismissed.

### iii.    First Amendment Freedom of Speech Claims

Plaintiff's First Amendment freedom of speech claims should be dismissed. He alleges that his right to freedom of speech was violated because they did not respond to his allegations and prison grievances appropriately. ECF No. 13 at 10 (alleging first amendment right to free speech violated when officials refused to process his grievances). This claim fails because there is no allegation that plaintiff was constrained in the filing of his grievances. And there is no right to have the government respond to his speech in a particular way. *L.F. v. Lake Wash. Sch. Dist.*

4

1 *#414*, 947 F.3d 621, 626 (9th Cir. 2020) ("And the First Amendment does not compel the government to respond to speech directed toward it.").

### iv. First Amendment Retaliation Claims

Defendants correctly argue that plaintiff's retaliation claims fail because he has not identified any protected conduct for which he was retaliated against. Plaintiff's allegations with respect to the named defendants, described above, are predicated on their failure to address threats to his safety. He does not allege that any defendants were motivated to ignore these threats because of any protected conduct. *See Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) ("To prevail on a retaliation claim, a plaintiff must show that his protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct.") (internal quotation marks omitted).

### v. Selective Enforcement

Plaintiff's selective enforcement claims, arising under the equal protection clause, fail because, as defendants argue, there is no allegation that he is part of a protected class. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996) ("The requirements for a selective-prosecution claim draw on ordinary equal protection standards. The claimant must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose.").

### vi. Eighth Amendment Failure to Protect Claims

There are two sets of failure-to-protect claims at issue. First, plaintiff alleges that other inmates and associated gangs have targeted him for death because he witnessed the murder. Second, plaintiff alleges that certain correctional staff have targeted him for violence because he is aware of their involvement in the murder. Neither set is cognizable as alleged.

With respect to the prisoner threats, plaintiff alleges that inmate Chavez threatened that he would be harmed "if he mention[ed] his Chavez's involvement in the murder." ECF No. 13 at 8. Chavez assured him that, so long as he kept quiet on this point, he would not be harmed. *Id.* Plaintiff allegedly assured Chavez that he had only mentioned prison staff's misdeeds connected to the murder and had not spoken about any prison gang's involvement. *Id.* As defendants point

5

1  out, plaintiff does not allege that he ever informed staff about Chavez or the gang's participation
2  in the murder, or that Chavez ever gave any indication that the terms of this agreement were no
3  longer valid.[1]  The allegations, taken as true, fail to show that any of the defendant staff had, or
4  plausibly could have had, knowledge of any threat to plaintiff posed by Chavez or the SNY gang.
5  *See Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) ("The failure of prison officials to
6  protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment
7  violation when: (1) the deprivation alleged is objectively, sufficiently serious and (2) the prison
8  officials had a sufficiently culpable state of mind, acting with deliberate indifference.") (internal
9  quotation marks omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 836 (1978) ("It is, indeed,
10 fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious
11 harm to a prisoner is the equivalent of recklessly disregarding that risk.").

12     Plaintiff's failure to protect claims based on threats made by prison staff are levied against
13 defendants Waller and Scott.  As noted above, he alleges that Waller failed to intercede when
14 non-party officers Burnes, Loza, and Gamboa made threatening gestures toward him on
15 November 29, 2019.  ECF No. 13 at 14.  The specific gestures involved nothing more than
16 pointing to a light fixture in plaintiff's cell.  *Id.*  Plaintiff claims that the inference, that they
17 would hang him, is derived from a previous interaction between the three officers and plaintiff on
18 November 23, 2018, when they explicitly made that threat.  *Id.*  First, this allegation is non-
19 sensical as articulated because the murder that these officers allegedly sought to cover up did not
20 occur until March 9, 2019.  *Id.* at 5.  Second, even if the date is interpreted as a typographical
21 error and plaintiff intended it to be November 23, 2019, there is no allegation that Waller was
22 present on that date and, therefore, understood that an officer pointing at a light fixture was a
23 death threat.  Critically, plaintiff does not allege that he told Waller about the previous incident.

---

[1] Confoundingly, the complaint appears to allege that plaintiff asked Chavez to threaten him, thus indicating that any prisoner threats were, at least in part, invited by plaintiff's own actions. ECF No. 13 at 7-8 ("Returning to his cell next to Chavez, [p]laintiff had Chavez write him a number of letters (kites) and therein lodge threats of death and violence telling [p]laintiff that if he mentions his (Chavez's) involvement in the murder that he (plaintiff) would be killed by members of his SNY gang.").

1  Instead, he alleges only that Waller "[saw] it all take place" and failed to alert the commanding
2  sergeant of plaintiff's "concerns." *Id.* at 14.

3  Given that there is no plausible allegation that Waller was deliberately indifferent during
4  the November 29, 2019 encounter, plaintiff also fails to state a failure to protect claim against
5  defendant Scott, whom he alleges condoned the Waller's actions. *Id.* at 17.

### vii. Code of Silence

Plaintiff's allegations regarding the existence of a "code of silence" are non-cognizable. Plaintiff broadly alleges that the named defendants have promulgated or condoned policies that have contributed to the alleged violations of his constitutional rights, including the: (1) retention and employment of the defendants themselves; (2) inadequately training CDCR personnel; and (3) allowing inmates to attack each other unchecked. *Id.* at 24-26. These allegations are bereft of specifics. Plaintiff does not allege how each defendant is individually responsible for these policies or how he knows that the policy in question is the motivating force behind any of the violations of his rights. Ultimately, these allegations, though verbose, amount to nothing more than the sort of "defendant unlawfully harmed me" allegations that the Supreme Court has held to be inadequate. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### viii. State Law Claims

Absent a viable remaining federal claim, I recommend that all of plaintiff's state law claims, including any state law claims against defendant Chavez, as yet unserved, be dismissed.[2] *See United Mine Workers of America v Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Plaintiff should not be prejudiced by the passing of any state law statute of limitations. *See Harvey v. Google Inc.*, No. 15-cv-03590-EMC, 2015 U.S. Dist. LEXIS 170381, *13 (N.D. Cal. Dec. 21, 2015) ("Pursuant to 28 U.S.C. §1367 (d), Plaintiff's state law claims were tolled while they were pending in federal court and for a period of 30 days from the date of this order.").

---

[2] As discussed *infra*, the federal claims against unserved defendants Voong, Navarro, and Olson will also be recommended for dismissal.

7

      **ix.   Dismissal with Leave to Amend**

I find that dismissal should be with leave to amend.  Generally, dismissal should be with leave to amend "unless it is clear that the complaint could not be saved by any amendment." *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018).  I cannot conclude that no amendment could save plaintiff's claims and so recommend that dismissal be with leave to amend.  Any amended complaint, however, will be subject to screening and plaintiff is advised that any complaint should be concise and contain only related claims.

    **II.   Motion to Have Defense Counsel Held in Contempt**

Plaintiff seeks to have defendants' counsel held in contempt for failing to investigate his claims before opting out of the court's early settlement program.  ECF No. 103.  Based on the representations made in the opposition, I am satisfied that defense counsel complied with court orders, and no sanction is warranted.

    **III.   Federal Claims Against Unserved Defendants**

I also find it appropriate to recommend dismissal of the claims against three unserved defendants: Voong, Navarro, and Olson.  Service was attempted for these defendants and, on April 5, 2023, those summons were returned unexecuted.  ECF No. 36. On April 24, 2023, plaintiff was directed to provide additional information so that service could be reattempted.  ECF No. 40.  No additional information was provided and service on these defendants was never reattempted.  Dismissal pursuant to Federal Rule of Civil Procedure 4(m) is warranted.[3]

    **IV.   Conclusion**

Accordingly, plaintiff's motion to have defense counsel held in contempt, ECF No. 103, is DENIED.

Further, it is RECOMMENDED that:

1. Defendants' motion to dismiss, ECF No. 106, be GRANTED in part, and plaintiff's

---

[3] This rule provides: "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

federal and state law claims against them be DISMISSED with leave to amend. Plaintiff's state law claim against Chavez should also be DISMISSED with leave to amend.

2. Plaintiff's claims against defendants Voong, Navarro, and Olson be DISMISSED without prejudice pursuant to Rule 4(m).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within fourteen days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: ___December 3, 2025___   _____
                                                      JEREMY D. PETERSON
                                                     UNITED STATES MAGISTRATE JUDGE